IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WENDELL P. STANLEY, JR.                                                                PLAINTIFF

v.                      Civil No. 5:17-cv-05186

CORPORAL TREY BRADY; DEPUTY                                                DEFENDANTS
ADAM BLAKE; DEPUTY ADAM BAKER;
DEPUTY DALTON TRIMMELL; and NURSE
HEATHER TRIMMER

# **OPINION**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Plaintiff is incarcerated in the Delta Regional Unit of the Arkansas Department of Correction.

The claims asserted in this case arose when Plaintiff was incarcerated in the Benton County Detention Center. Specifically, Plaintiff contends his constitutional rights were violated when: (1) he was denied adequate medical care by Nurse Trimmer; and (2) excessive force was used against him by Corporal Brady and Deputies Blake, Baker and Trimmell.

On May 24, 2018, the Separate Defendant Nurse Trimmer filed a Motion for Summary Judgment (ECF No. 41). That same day, an Order (ECF No. 44) was entered directing Plaintiff to file a response to the Motion for Summary Judgment by June 14, 2018. Plaintiff was advised that failure to respond to the Order would subject the case to dismissal.

On June 7, 2018, Corporal Brady and Deputies Blake, Baker and Trimmell filed a Motion for Summary Judgment (ECF No. 48). On June 13, 2018, an Order (ECF No. 53) was entered directing Plaintiff to file a response to the Motion for Summary Judgment by July 5, 2018. Plaintiff was advised that failure to respond to the Order would subject the case to dismissal.

[1]

To date, Plaintiff has not filed a response to either of the Motions for Summary Judgment. He has not requested an extension of time to file his responses. No mail has been returned as undeliverable. Plaintiff has failed to comply with the Court's Orders (ECF Nos. 44 & 53) requiring him to file his summary judgment responses by June 14, 2018, and July 5, 2018, respectively.

Plaintiff was advised that failure to comply with the Court's Orders (ECF Nos. 44 & 53) would result in: (a) all of the facts set forth by the Defendants in the summary judgment papers being deemed admitted by Plaintiff, pursuant to Local Rule 56.1(c); and/or (b) shall subject this case to dismissal, without prejudice, pursuant to Local Rule 5.5(c)(2). In this case, the Court will deem all facts set forth in the Defendants' statements of fact (ECF Nos. 42 & 50) admitted by the Plaintiff.

### I. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In this case, the facts set forth by the Defendants are deemed admitted. The question is whether given the facts as admitted, there are genuine issues of material fact as to whether Plaintiff's constitutional rights were violated.

### II. Nurse Trimmer's Summary Judgment Motion[1]

The following facts are deemed admitted: Plaintiff was booked into Benton County Detention Center on June 16, 2017. On or about July 21, 2017, Plaintiff was allegedly involved in an altercation with correction officers. Plaintiff alleges that his ribs were injured. On July 22, 2017, Plaintiff was seen by a member of the nursing staff, and bruises were noted to Plaintiff's ribs. Plaintiff was noted to have no shortness of breath, and his lungs were clear. The jail doctor was contacted. That same day, the jail doctor ordered x-rays of Plaintiff's ribs. The x-rays were performed that day. The x-rays revealed no fracture or costovertebral dislocation. The conclusion was "normal bilateral rib series." Although Plaintiff alleges in his Complaint that he saw a rib fracture on his x-rays, the x-rays were read by an independent radiologist whose report noted no fractures. The x-rays were never seen by

---

[1] Plaintiff's official capacity claims against Nurse Trimmer were dismissed by Opinion and Order entered on January 4, 2018. (ECF No. 27).

the Plaintiff. On July 22, 2017, the jail doctor prescribed Ibuprofen 600 mg to be administered twice a day for seven days.

On July 28, 2017, Plaintiff advised a member of the nursing staff that he noticed blood in his urine. Blood in the urine is called "hematuria." A urinalysis performed on July 28, 2017, showed clear yellow urine that tested negative for the presence of blood. On July 31, 2017, the jail doctor prescribed Ibuprofen 800 mg to be administered twice a day for 14 days. Plaintiff received this course of Ibuprofen as prescribed until August 13, 2017. On August 17, 2017, Plaintiff began receiving Ibuprofen 600 mg. The order was for seven days.

Plaintiff never requested any pain relievers or other treatment for his rib pain after August 17, 2017. The appropriate treatment for bruised ribs is to administer medications to limit the pain and inflammation. Non-Steroidal Anti-inflammatory drugs (NSAIDs) are indicated to control both pain and inflammation. Ibuprofen is an NSAID. Plaintiff received Ibuprofen for over a month after his altercation. These facts are appropriately supported by Nurse Trimmer's affidavit and the Plaintiff's medical records.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Nurse Trimmer acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

"Whether an official was deliberately indifferent requires both an objective and a subjective analysis." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)(citation omitted). The objective prong requires the Plaintiff to "establish he suffered from an objectively serious medical need. Under the subjective prong, Plaintiff must show that an official 'actually knew of but deliberately disregarded his serious medical need.'" *Id.* (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "The subjective inquiry must show a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Gordon ex rel. Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).

Nurse Trimmer does not challenge the existence of a serious medical need. Instead, she maintains Plaintiff cannot, on the record before us, establish she acted with deliberate indifference. The Court agrees. Plaintiff was provided with appropriate medical care, a physical examination, an x-ray, and the provision of Ibuprofen, for his bruised ribs. His claim here amounts to nothing more than a disagreement with the actions of the medical staff including Nurse Trimmer. This is insufficient.

Nurse Trimmer is entitled to summary judgment in her favor.

### III. Jailers' Summary Judgment Motion

The form complaint used by Plaintiff has an area for the Plaintiff to indicate whether he is suing the Defendants in their individual capacity, official capacity, or both capacities. In this case, Plaintiff placed marks in all three areas but has used both a check mark next to official capacity only and an "x" next to personal capacity only, and both a check mark and an "x" next to both official and personal capacity claims. It is therefore not clear what Plaintiff meant by utilizing the different marks. Defendants maintain Plaintiff has asserted an official capacity claim only. However, the Defendants have also, for purposes of this motion, addressed the merits of a possible individual capacity claim.

### (A). Facts Deemed Admitted

The following facts are deemed admitted for purposes of this motion. Plaintiff was housed in E-pod at the detention center. On July 22, 2017, at 11:40 a.m., he used the cell intercom to inform Deputy Baker, who was working in pod control, that he did not want three inmates assigned to his cell and if someone was not moved out he was going to fight. When he was told nothing could be done because there were too many inmates, Plaintiff began kicking his cell door.

Deputy Dorsey called Corporal Brady to come to E-pod because of the Plaintiff's threat to fight if a third inmate was returned to the cell. Sergeant Lombard was notified and the decision made to place Plaintiff in a restraint chair. Deputy Dorsey called Deputy Trimmell and asked him to bring the restraint chair to E-pod. Deputy Blake was also called to E-pod.

At 11:46 a.m., Corporal Brady, Deputies Baker, Trimmell, Blake, and multiple other deputies entered the pod and approached Plaintiff's cell. Plaintiff was standing at the window and refused to comply with an order to go to the back of his cell. The cell door was opened and Plaintiff was in an aggressive stance with his hands balled into fists at his side. Deputy Baker attempted to control Plaintiff while ordering him to the back of the cell. Plaintiff began to resist very aggressively while stating "let's go then."

Corporal Brady took control of Plaintiff's upper back while attempting to place him on the floor. While Deputies Baker, Trimmell, Dorsey and Corporal Brady were attempting to gain control of the Plaintiff, he kicked Deputy Blake in the forehead and Deputy Wright in the left of his face. Deputy Dorsey gained control of Plaintiff's legs. Plaintiff continued to resist being rolled over on his stomach. Once on his stomach, Plaintiff resisted being handcuffed by refusing to remove his hands from under his stomach. After several orders, Deputy Dorsey used several knee strikes to Plaintiff's left side to gain his compliance. Corporal Brady put his boot on Plaintiff's buttocks in order to keep him restrained. Plaintiff continued to resist being handcuffed while yelling profanity at all deputies in the cell. Deputy Baker delivered multiple closed hand strikes to Plaintiff's upper

[5]

back. Plaintiff put his hands behind his back, was handcuffed, and helped to his feet. Plaintiff was escorted out of the cell to pod control and placed in a pro-restraint chair. Plaintiff continued to make verbal threats as he was being placed in the restraint chair.

After Plaintiff had calmed down, at approximately 11:58 a.m., Corporal Brady escorted Plaintiff to the recreation yard, removed his handcuffs, and spoke with him about his behavior. Plaintiff was escorted back to his cell. As discussed above, in connection with Nurse Trimmer's summary judgment motion, Plaintiff sought medical care for an injury to his ribs.

These facts are appropriately supported with jail incident reports, jail policies, and a video exhibit. However, no camera view includes the inside of the cell. While it appears that a struggle occurs, it is not possible to make out actions of the individual parties.

**(B). Official Capacity Claim.**

An official capacity claim is the equivalent of naming the government entity that employs the official. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). To state a claim against a governmental entity, plaintiff must allege that a policy or custom of the governmental entity is responsible for the alleged constitutional violation. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694 (1978). In other words Plaintiff must prove both the existence of a governmental policy and custom and also "that [the governmental entity's] policy or custom was the 'moving force [behind] the constitutional violation.'" *Dahl v. Rice Cnty., Minn.*, 621 F. 3d 740, 743 (8th Cir. 2010)(citation omitted)

While Plaintiff has sued these Defendants in their official capacity, he has not alleged that their actions were taken pursuant to any custom, policy, or practice of Benton County. In this case, the record contains no evidence of the existence of any such custom or policy.

Defendants are entitled to summary judgment on the official capacity claims.

**(C). Individual Capacity Claims**

"Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).[2] "Because the use of force is sometimes required in prison settings, guards are liable only if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically." *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008). Relevant factors to be considered for this inquiry include "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, . . .any efforts made to temper the severity of a forceful response," and the extent of injury to the inmate. *Hudson*, 503 U.S. at 7 (internal quotations omitted).

The record indicates Plaintiff was kicking the cell door repeatedly and had issued threats to start fighting if a third inmate was allowed back in his cell. This precipitated the confrontation that followed and gave Defendants little option other than entering the cell to remove Plaintiff and restore order. Plaintiff's refusal to comply with orders to go to the back of his cell and his actions in physically resisting Defendants' efforts to handcuff him gave Defendants no option other than to use force "in a good faith effort to maintain or restore discipline." *Arnold v. Groose*, 109 F.3d 1292, 1298 (8th Cir. 1997).

Defendants are entitled to summary judgment in their individual capacities.

**(D). Qualified Immunity**

Analyzing a claim of qualified immunity requires a two-step inquiry. *Jones v. McNeese,* 675 F.3d 1158, 1161 (8th Cir. 2012). "An official is entitled to qualified immunity unless (1) the evidence,

---

[2] Plaintiff was in convicted status. *See* (ECF No. 1 at 3).

viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Robinson v. Payton,* 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009).

In this case, the Court has answered the first question negatively. Defendants are therefore entitled to qualified immunity.

### IV.     CONCLUSION

For the reasons stated, this case is subject to dismissal for the following reasons: (1) Plaintiff's failure to obey the order of the Court, and his failure to comply with Local Rule 5.5(c)(2). Fed. R. Civ. P. 41(b); and (2) Defendants are entitled to summary judgment in their favor. A separate judgment will be entered in accordance with this Opinion.

Dated this 27th day of August 2018.

/s/ P. K. Holmes, III
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE